## NEW YORK LIFE INSURANCE CO. *v.* BABCOCK.

1. A contract of life-insurance is consummated upon the unconditional written acceptance of the application for insurance by the company to which such application is made.
2. Actual delivery of the policy to the insured is not essential to the validity of a contract of life-insurance, unless expressly made so by the terms of the contract.
3. The receipt by an agent from his insurance company of a policy to be unconditionally delivered by him to the applicant is, in law, tantamount to a delivery to the insured, although the agent never parts with possession of the policy, and although its delivery to the applicant is by contract made essential to its validity.
4. It follows from the above, that where an application for life-insurance was accepted by an insurance company, a policy duly executed was issued thereon, and was sent by the company from its home office in New York to its local agent in this State to be unconditionally delivered to the applicant, who was in life and in good health when the agent received the policy, and where the agent, instead of handing the policy to the insured, kept it, but nothing remained for the insured to do before he was entitled to its possession, there was in law a complete delivery of the policy to the insured and a consummation of the contract of insurance ; and the company is not relieved of liability on its contract because a receipt,

previously given by such agent to the applicant for a premium paid in advance, contained a stipulation to the effect that the company should not be liable until the policy was delivered to the applicant while in good health.

Argued February 15, — Decided April 11, 1898.

Action on insurance policy.    Before Judge Fite.    Whitfield superior court.    April term, 1897.

*Fulton Colville*, for plaintiff in error.

*Jones, Martin & Jones* and *R. J. & J. McCamy*, contra.

LEWIS, J.    This was a suit upon a policy of life-insurance. The case was submitted to the court without a jury, upon an agreed statement of facts, the substance of which was as follows: On November 20, 1895, H. C. Babcock made application to J. D. Thomas, local agent at Dalton, Ga., of the defendant company, for insurance of $5,000.    On the same day Babcock paid the agent the first year's premium on said policy, to wit $174, and at the same time said local agent gave to said Babcock a receipt to the effect that this sum of $174 should be held for Babcock on the condition, "that if the officers at the home office of the New York Life Insurance Company approve an application made by him this day for an insurance of five thousand dollars, and a policy is issued and delivered to him while living and in good health, said sum shall be applied in payment of the first annual premium on said insurance, provided on or before such delivery he shall first pay any balance of said premium."    And, "that unless his application is approved, and a policy is issued and delivered to him while living and in good health, and until such first annual premium is paid in full, the New York Life Insurance Company incurs no liability except for the return of said sum on surrender of this receipt." The receipt further stipulated, "That no agent has power in behalf of said company to make any contract of insurance or to bind said company by making any promise or making or receiving any representation or information."    The application made at the same time the receipt was given was at once forwarded by the agent to the home office of the company in New York.    It was provided in the application, "That the company

shall incur no liability under this application until it has been received, approved, the policy issued thereon by the company at the home office, and the premium has actually been paid to and accepted by the company or its authorized agent during my lifetime and good health." This application was stamped: "Received November 25th, 1895. Home Office." In the application was this further provision: "That the foregoing application, together with the answers made to the medical examiner in continuation of and forming part of the application, shall be a consideration for and the basis of the contract of the New York Life Insurance Company, under any policy issued under this application." On the 26th day of November, 1895, a policy of insurance to the applicant was issued, in which was contained the exact provisions above quoted from the application; and on the face of this policy were the words: "In witness whereof the New York Life Insurance Company has by its duly authorized officers signed and delivered this contract, this the 26th day of November, 1895." Signed by the president and secretary of the company.

The above policy was mailed to the local agent of the company at Dalton, Ga. It reached Dalton and was delivered to the agent, Thomas, by the postmaster about 2 p. m. on November 30, 1895. Thomas made no effort to deliver the policy to the applicant Babcock, whose office was about three minutes walk from the post-office, but carried it home with him, his home being about one mile from the post-office. The policy remained in this agent's possession until about nine o'clock of the morning of December 2, 1895, at which time one Sherry McAuley, whom the agent knew to be an intimate friend of Babcock, called and asked for said policy, stating that he was authorized to receive it. The agent asked if Babcock was sick, and McAuley replied that he was not. After hesitating, the agent delivered the policy to McAuley. After McAuley had received the policy, he then informed Thomas that Babcock was dead; that he was found dead on the afternoon of the day before in his office with a pistol wound in his breast. This was the first knowledge the agent had of Babcock's death; and he at once demanded the return of the policy, but McAuley re-

fused to give it up.    The plaintiff, Adelaide A. Babcock, is the party named in the policy as beneficiary, and is the mother of the deceased applicant.    Demand was duly made by plaintiff on defendant company for the payment of the policy after the same became due, which demand was refused.    No offer to return the money paid by the applicant to the agent Thomas had ever been made to the legal representative of the estate of Babcock until the day of the trial.    Babcock, the applicant, died on December 1, 1895, about 4 o'clock in the afternoon, and was in good health up to the time of his death.

After argument had upon the foregoing evidence, the court rendered a judgment for the plaintiff against the defendant for the principal sum sued for, $5,000, besides interest and costs of suit.    To this judgment defendant excepted upon the following grounds:    (1) Because the court erred in holding the contract between the parties was consummated without the delivery of the policy, the parties having contracted, as defendant contends, that actual delivery of the policy should be made during life of applicant.    (2) Because the court erred in holding there was a delivery of the policy under the contract.    (3) Because the court erred in disregarding the conditional receipt as being a part of the contract, said receipt declaring the policy must be delivered during the lifetime of the applicant.    (4) Because the court erred in holding the applicant had paid his first premium, the conditional receipt showing, as defendant contends, that there was really no payment, and that there was no intention upon the part of the applicant to pay, or defendant to receive, said money as a premium.

The fundamental question to be determined in the legal construction of all contracts is, what was the real intention of the parties?    Where one party makes a proposition to purchase a thing which is unconditionally accepted by the other, the contract of purchase becomes complete.    There is no reason why the same rule should not be applied when a written application is made for an insurance policy.    So long as the application is not acted upon by the insurance company, of course no contract has been consummated; and if the applicant should die before the acceptance of his application, the company has incurred no

liability. But when the application is accepted, and nothing remains for the applicant to do, the contract becomes complete. Actual delivery of the policy to the insured is not essential to the validity of such a contract, unless expressly made so by its terms. It is true that whether or not a policy has been delivered often becomes a material question; for this is usually the most effective way of proving the acceptance of the application made by the insured. But the contract may be otherwise proved, and when it is shown to be in writing, it is ordinarily binding upon the company, though there should be no delivery whatever, either actual or constructive, of the policy, and though it should remain in the hands of the company. This principle is settled by the provisions of our statute, which declares: "Such contract [fire-insurance], to be binding, must be in writing; but delivery is not necessary if, in other respects, the contract is consummated." Civil Code, §2089. By section 2117 of the Civil Code the same principle is made applicable to life-insurance. See Cooke on Life Insurance, 43; 1 Joyce on Insurance, §91. See also opinion of Chief Justice Simmons in *Alston* v. *Greenwich Ins. Co.*, 100 *Ga.* 282.

We do not mean to say, however, that the insurer and the insured can not by their contract make an actual delivery of the policy essential to its validity. We see no reason why an insurance company can not stipulate in its agreement to insure that its risk shall not begin until some definite time in the future, or until some specified act has been done. It is insisted in this case by the plaintiff in error, that the receipt given by the local agent to the applicant when the first annual premium was paid constitutes a part of the contract of insurance, and that by virtue of the terms of this receipt it was expressly agreed between the parties that the insurance company should incur no liability until its policy had been actually delivered to the applicant. We think it very questionable whether the provision in this receipt in reference to a delivery of the policy forms any part of the contract sued on in this case. It was evidently given to protect the company against any liability in the event the application made to it should be rejected. The agent who gave the receipt had no authority to make any contract of in-

surance. When the application was passed upon by the duly
authorized officers of the company, they could accept it upon
such terms and conditions as they might stipulate. They could
have embodied in the final contract the conditions appearing in
the receipt, or have waived their right to do so by agreeing to
insure the life of the applicant without prescribing the condi- .
tions named in the receipt. In the application that was passed
upon and accepted by the company no such condition appears.
The policy that was issued was evidence of the acceptance of
this application. The one had direct reference to the other, and
neither made any reference whatever to any stipulation con-
tained in the receipt. The policy having referred to, and even
quoted verbatim the conditions named in the application, and
having made no allusion whatever to any other paper, the
position, to say the least, is plausible that it was the intention
of the company not to make the receipt a part of its contract.
But a decision of this question is not necessary, under the
view we take of this case; for, under the facts in the record,
we hold the condition in the receipt as to delivery of the policy
was fulfilled. This case is treated just as if the policy never
left the hands of the local agent; for the means by which he
was induced to part with its possession after the death of the
insured can not strengthen the case of the defendant in error.

The sole defense of the plaintiff in error is based upon the
contention that, under its contract, it was to incur no liability
until there had been a delivery of the policy to the applicant.
Assuming that this condition constitutes a part of the agree-
ment between the parties, it then becomes a material question
as to whether or not such delivery was effected before the death
of the insured. This is also a question of intention, and must
be determined from the facts and circumstances in this case.
As a general rule, whenever one parts with the custody and
control of anything with the intention at the time that it shall
pass into the possession of another, its delivery to such other
person has, in contemplation of law, become complete. The
mere manual possession of the thing intended to be delivered
is a matter of little consequence. Such possession may exist
without any legal delivery, and it may not exist when a legal

delivery has been effected.  For instance, where one has obtained possession of property fraudulently, or without the knowledge or consent of the owner, there is no delivery from the one to the other, the controlling element of intention being absent.  On the other hand, where a person parts with dominion and control over a thing by transmitting it, for example, through the mails or otherwise, with the intention that it shall pass unconditionally into the hands of another, and in the course of transportation it has become lost, the delivery is nevertheless complete in law.  The controlling question then on this subject of delivery is, not who has the *actual* possession, but who has the *right* of possession.  Applying these principles to the facts before us, we think that the delivery of the policy in question to the applicant had, in contemplation of law, been effected before his death.  When his application was accepted at the home office in New York, and a policy issued thereon was placed in the mails for the sole purpose of ultimately reaching his hands, the company parted with its possession and control of the paper.  The intention to deliver was complete.  The premium money which it had held up to that time upon a conditional trust then became its absolute property.  It would have been guilty of no breach of trust in appropriating the fund to its own use.  For this privilege it thus acquired there must have been a corresponding benefit accruing to the original owner of the fund; and what he acquired in lieu of his money was an insurance upon his life, and a right to the policy which evidenced the consummation of the contract.  If the delivery was not complete when the policy was mailed, it certainly became so when it reached the hands of the local agent during the lifetime of the applicant, and while he was in good health.  Construing this act of the company in transmitting the policy to the agent, in the light of this contract, it necessarily follows, in the absence of any proof to the contrary, that the agent received the policy charged with no other duty except to hand it unconditionally to the applicant.  If this be true, the possession of the agent was the possession of the applicant, and while in the hands of the agent the policy was simply held by him on deposit, or in trust for its real owner.

This owner had a right to demand possession of it. Upon refusal, he could have recovered it by an action of trover. Conceding this right, we can not see how death can rob the beneficiary of her rights under the contract.

Upon a careful examination of the authorities cited for the plaintiff in error, as well as others bearing upon the subject, we find nothing in conflict with the above views. In the case of Kohen *v.* Mutual Reserve Fund Life Ass'n, 28 Fed. Rep. 705, decided by Brewer, J., of the circuit court of Missouri, it was held: "Where the application for insurance provides that the policy shall not be in force until it is delivered to the applicant, the contract of insurance will not become binding upon the company until delivered." It will be seen from the facts in that case, that before the application was finally passed upon by the company in New York, it had received news of the death of the applicant. The company in consequence prepared no certificate of membership, and issued no policy to the applicant. The question as to what would have constituted delivery had the policy issued did not arise in that case. In Misselhorn *v.* Mutual Reserve Fund Life Ass'n, 30 Fed. Rep. 545, decided by the same court, it was held: "Where an application for life-insurance, and the policy issued thereon, both provided that the policy should not be in force until 'signed by the officers of the association, and delivered to the applicant,' and the policy was made out after the applicant's death, and, in ignorance thereof, delivered at the place where he had resided, held, that it was void." The plaintiff sought to hold the company liable in that case on account of delay in passing upon the application. The company defended on the ground that the proposition which the applicant made was for the policy to become operative when the instrument was executed and delivered, and the instrument being executed in ignorance of a material fact, the company was held not liable. The question of what would have constituted delivery had the applicant been in life when the policy issued was not discussed. In the case of McCully's adm'r *v.* Phœnix M. L. Ins. Co., 18 W. Va. 782 (3), it is ruled: "A condition, that the contract shall not take effect except upon the delivery of the policy, must be per-

formed, before the contract is complete." It will appear, however, from the facts in that case, that while the policy had left the home office and had been transmitted to the local agent, yet Patton, J., delivering the opinion, put his ruling upon the ground that the policy on its face showed that it was not sent to the agent to be delivered *absolutely to McCully*, but only when countersigned by the agent. The case of Steinle *v.* New York Life Ins. Co., 81 Fed. Rep. 489, was claimed by the plaintiff in error to be one in point, as it involved rights of the company growing out of a receipt just like the one in the case at bar. The two receipts are similar. But it appears from the facts in that case that the application was never in point of fact accepted; and it was simply held that if the applicant died before the *acceptance* of his application, the company was not liable. Counsel for plaintiff in error also cites 1 Joyce on Insurance, § 98, which lays down the same doctrine enunciated in the above cases, to the effect that where an agreement is made that the policy shall not be in force until actually delivered to the applicant, the contract is not consummated nor the company bound in the absence of such delivery. But in the same section the author says that this rule is subject to certain qualifications; and among the modifications given by him subsequently (§ 102) is this: "As a rule, an unconditional delivery of the policy to the agent for delivery to the insured binds the company, and the agent may not refuse to deliver upon tender of the premium, although the insured may be seriously sick."

The above authorities we have selected are among the strongest relied upon by the plaintiff in error; and we merely call attention to them to show that they decide no principle in conflict with our ruling in this case. On the other hand, the principle upon which the third headnote is founded is abundantly sustained by authority, as well as reason. In Newark Mach. Co. *v.* Kenton Ins. Co., 35 N. E. Rep. 1060, it was held: "When the terms of an executed policy have been unconditionally accepted by the insured, and it has thereafter been treated as in force by the parties, its delivery will be regarded as complete, *though it remain in the hands of the insurer's agent.*"

In Mutual Life Ins. Co. *v.* Thomson, 22 S. W. Rep. 87, it was held that where a policy was forwarded by the company to its agent, and by the latter delivered to a broker, the premium having been paid, the company was liable, though the policy had not been delivered to the applicant, but to his widow after his death.    The Supreme Court of Kentucky in that case based its ruling upon the ground that the applicant had a right to the possession of the policy.    In Commercial Ins. Co. *v.* Hallock, 72 Am. Dec. 379, it was held :   "Acceptance of proposition to insure completes contract of insurance; and the policy sent by mail to the agent for delivery can not be rescinded without the consent of the insured."    In the case of Yonge *v.* Equitable Life Assur. Soc., 30 Fed. Rep. 902, the applicant was taken sick the same day the agent received the policy from the home office.    It was held that the policy was binding upon the company from the time it left the home office; if not then, when the agent received it.    In 1 May on Insurance (3d ed.) § 55, it is declared that where a policy is made and forwarded to the agent to be delivered to applicant on payment of premium, he is not entitled to the policy without such payment. Such a case, however, says the author, is to be distinguished from those where the party claiming the policy has done everything which is required of him.    In the one case the policy is held merely as a deposit, and for delivery; while, in the other, it is held for payment of the premium.    Again, in section 56, the same author says:   "The mere manual possession of the policy is of little consequence, whether it be in the hands of the insurers or the insured."    In section 60 of the same work it is declared :   "To constitute a delivery of the policy, it is not necessary that there should be an actual manual transfer from one party to the other.   The agreement upon all the terms, and the issue and transmission to the agent of a policy in accordance therewith, for delivery without conditions, is tantamount to a delivery to the insured.   .   .   Whether there is a delivery or not is often a question of intention."   1 Joyce on Insurance, § 95, declares that non-delivery by reason of the negligence of the company or its agents does not relieve the insurer of liability.

To the same effect are the decisions of this court upon the subject of what constitutes a valid delivery of a deed. The law makes such delivery essential to the conveyance of title to realty. What would constitute a sufficient delivery in law of a deed would be equally sufficient in the case of an insurance policy, even where the contract between the insurer and the insured stipulated that there should be no liability until delivery of its policy. In the one case the parties supply by contract what the law requires in the other. *Rushin* v. *Shields & Ball*, 11 *Ga.* 636 (5); *Alexander & Howell* v. *Leith*, 39 *Ga.* 180; *O'Neal* v. *Brown*, 67 *Ga.* 707; *Ross* v. *Campbell*, 73 *Ga.* 309–310. In any view then that we take of this case, whether the receipt given by the local agent to the applicant constitutes a part of the contract of insurance or not, the defendant company was liable. The insured had complied with every condition and had done everything required of him in order to obtain insurance upon his life. The company had unconditionally accepted his application and issued a policy to be unconditionally delivered to him. That policy was received by its local agent who, through negligence or in disregard of his obligations both to his company and to the other contracting party, failed, without excuse and without authority, to hand the policy to its real owner. In consequence of this failure and negligence, the company contends it is not liable. It thus seeks to take advantage of the wrong of its own agent, by virtually pleading his negligence as a defense to this action. The law should be plain in its terms and unmistakable in its meaning before a court should hold that for such a cause an insurance policy was inoperative. As was held by this court in the case of *Clay* v. *Phœnix Ins. Co.*, 97 *Ga.* 44, "stipulations and conditions in policies of insurance, like those in all other contracts, are to have a reasonable intendment, and are to be so construed, if possible, as to avoid forfeitures and to advance the beneficial purposes intended to be accomplished."

*Judgment affirmed. All concurring, except Cobb, J., absent.*