### FIRE INSURANCE.

[Circuit Court of Lorain County.]

MANCHESTER FIRE INSURANCE CO. v. HENRY A. PLATO ET AL.*

Decided, October 10, 1901.

*Insurance—Authority of Agent—Policy Written but Not Delivered or Premium Paid When Fire Occurred—Provision for Five Days' Notice Before Cancellation—Question of Cancellation.*

1. Where the agent of several insurance companies is solicited to place a policy for a given amount on a specified piece of property, and replies that he will do so, and thereafter writes a policy on the property in one of his companies, and the building is a few days later destroyed by fire, the company in which the policy was written is liable thereon, notwithstanding the policy had not been delivered nor the premium paid, there being no claim that the policy was not delivered because of failure to pay the premium.

2. The writing of the policy by the agent before submitting the risk to the home office bound the company, and a finding by the jury that five days' notice of the cancellation of the policy was not given as required by its terms will not be set aside, where the testimony as to notice was directly contradictory.

MARVIN, J.; CALDWELL, J., and HALE, J., concur.

Heard on error.

In the case of the Manchester Fire Association against Henry A. Plato and John E. Plato, the defendants in error were the owners of a store building in North Amherst in this country. On October 13, 1900, one H. N. Steele, who was acting for the Platos, as their agent in the premises, had a conversation by telephone with Mr. R. W. Pomeroy about the insurance of their property. Pomeroy was the agent of a number of fire insurance companies, including the plaintiff in error. Steele asked him to insure the property. Steele and Pomeroy are at issue as to just what was said in this conversation.

Steele's testimony in regard to it is this:

"I asked Mr. Pomeroy over the phone if he would place $500 insurance on the H. A. and J. E. Plato store building, lot No.

---

*Affirmed by the Supreme Court without report, April 27, 1903.

48, rate two per cent., and to begin that day, and he said he would.''

Pomeroy's testimony on the subject is this:

''He called me up and wanted to know if I could place $500 on Plato Brothers' store building, he called it. I told him I did not know whether I could or not, but I would try.''

Then this question was asked: ''Did you tell him that you would place or carry $500 on that?''

Answer. ''Not positively; no, I did not.''

As the result of that conversation Mr. Pomeroy thereafter wrote out a policy for the Platos for $500 in the German Insurance Company, of Freeport, Ill., of which he was the agent. In reference to this policy Pomeroy was asked this question upon the trial: ''And what did you do with that policy?'' Answer. ''It was canceled; it was returned to the company.'' Question. ''Was it ever sent to Platos or Steele?'' Answer. ''No, sir never went out of the office.'' After this was done, Pomeroy testified as follows: Question. ''Well, after that was canceled and returned, what did you do then?'' Answer. ''I wrote a policy in the Manchester.'' This latter policy was dated on October 16, 1900, and is made a part of the bill of exceptions.

There is no question as to the authority of Pomeroy to write and issue this policy and thereby bind the company by its terms.

The building named in the policy was totally destroyed by fire on December 26, 1900, and the owners made proper proofs of loss, so if the policy was in force at the time of the fire they were entitled to recover from the company the amount of the indemnity named therein, to-wit, $500.

The company denied liability and suit was brought against it by the Platos on the policy, and judgment obtained against the company, to reverse which this proceeding in error is prosecuted.

On the part of the company it is urged that the company was never bound by the policy. The policy remained in the office of Pomeroy until it was sent by him to the insurance company as hereinafter mentioned. Neither the Platos or Steele paid the premium on the policy, nor was such premium tendered to the company or its agent until after the destruction of the insured

property, when Steele made tender of the proper amount, acceptance of which was refused by Pomeroy.

It appears there had been a course of dealing extending over a period of several years between Steele and Pomeroy, by which Steele, who was himself the agent of one or more insurance companies at North Amherst, would have Pomeory issue policies to his customers when he could not in his own company carry the insurance, and then later a settlement would be had between Steele and Pomeroy, at which Steele would pay Pomeroy on such policies as he had written for Steele's customers. This being true, the fact of non-payment of premiums alone ought not to prevent the insured from recovery especially when no claim is made that Pomeroy retained the policy on account of such non-payment.

If Pomeroy had the conversation with Steele as he says he did, and in pursuance of what was then said wrote this policy and reported it to his company he bound the company by its terms. See *Machine Co.* v. *Insurance Co.,* 50 Ohio St., 549; see also *New York Life Ins. Co.* v. *Babcock,* 30 S. E. Rep., 273 (104 Ga., 67). This last was a life insurance case. The application was made to the agent, and by him forwarded to the company; the premium was paid at the time the application was left with the agent, the company accepted the risk and issued the policy and sent it to its agent. It remained in his hands until after the death of the assured. The court held that the company had bound itself.

It is true the premium there was paid. But what has already been said disposes of what we think as to the premium in this case. In that case the application had been sent to the company, because in life insurance the policies are not binding until the company has approved of the application; indeed the policies are not issued except as the company approves the application.

In this case the policy itself shows that Pomeroy was authorized to issue the policy, and it became valid upon the signature of the agent, providing, of course, the other things necessary to make it a contract took place. The fact that the policy had not been delivered to the assured in the case to which attention is called in *New York Life Ins. Co.* v. *Babcock, supra,* cuts no figure in the decision. The court held the policy remaining in

the hands of the agent did not affect the question of whether the contract of insurance was binding upon the company. To the same effect is the text of 16 Am. & Eng. Enc. Law (2d Ed.), 855, and the authorities there cited.

It is urged on the part of the insurance company that Pomeroy did not promise Steele he would insure this property in one of his companies; but only that he would try to insure it. Pomeroy, who had full authority to bind the company by issuing the policy, immediately wrote a policy in the German company which he canceled, as he says, by order of the company. The very fact of cancellation is evidence that in that company at least there was a contract by which until canceled it was bound.

In *Insurance Co.* v. *Maguire*, 51 Ills., 347, this language is used: "The very fact of an attempt at cancellation is an admission there was a policy capable of being canceled."

Upon the cancellation of this policy in the Freeport company, without any further conversation or communication with the assured or their agent, Pomeroy wrote the insurance involved in the present action. The policy provides for a cancellation by the company upon a five days' notice. If this was not to take effect until Pomeroy should hear from the home office, why did he write it; why not submit the question of whether the company would carry the risk to the home office before writing the policy? This question in substance was asked in various forms of Mr. Pomeroy, and no satisfactory answer was given. It seems clear the policy was written upon the understanding that the company should be bound by it until it should be canceled, which could be done upon five days' notice to the assured.

When this policy was reported by Pomeroy to the home office, the company notified him the company would not carry the risk at the rate stipulated, and he thereafter sent the policy to the home office; just how soon does not appear. And Mr. Pomeroy says he notified Steele that the company would not carry the risk, and he gives the conversation in which he says he gave this notice. Steele denies this. They are distinctly at issue about it.

If, as has been already stated, the company became bound by the terms of the policy, then it remained in force until canceled

and notice of such cancellation must have been given to the assured, and the notice must have been at least five days before the policy ceased to be valid.

The burden was upon the company to show that there had been such cancellation, if the policy was ever binding.

The jury must have found that no such notice was served upon the assured, and under the law as given by the court, none upon Steele. As to whether notice to Steele would have been sufficient it is unnecessary to discuss.

Attention is called to the case of *White* v. *Ins. Co.*, 95 Fed. Rep., 161, upon the question as to whether notice to an insurance broker who effected the insurance is sufficient notice to bind the assured. But whether that be so or not, we are not satisfied that the jury were wrong in finding that no notice was served upon either the assured or upon Steele of the cancellation of the policy; that being so that no notice was served, the policy remained in force and it entitled the assured to recover as it did recover in this case. We are not prepared to say the jury found wrong on that fact, and hence the judgment is affirmed.

*E. G. Johnson* and *F. M. Stevens,* for plaintiff in error.

*H. G. Redington* and *Webber & Metcalf,* for defendant in error.