8396.   MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY *v.* BOSWELL.

1. The petition as amended was not subject to general demurrer or to any of the special demurrers interposed.
2. Under a proper construction of the contract ·of insurance, an *actual* delivery of the policy of insurance was not stipulated for, and it was not necessary for the plaintiff to allege or prove an actual delivery.
3. Under a proper construction of the contract of insurance, there is no requirement that the insured, at the time of the approval of his application and of the issuance of a policy of insurance thereon, and at the time of the delivery of the policy, shall be in the same condition of health that he was in when he signed the application. The only requirement as to health is that the applicant for insurance shall be in the same condition of health *when the payment of the first premium on the policy is made* that he was in when he made the application.
4. Under the facts of the case, if the policy of insurance was not delivered, within the meaning of the law, to the applicant or his agent, on June 16, 1911, when the insurance company approved the application, issued the policy, and placed it in the mails at its home office in Springfield, Massachusetts, addressed to its agent at Savannah, Georgia, to be ultimately delivered to the applicant by another of its agents at Thomasville, Georgia, it was certainly so delivered when, during the lifetime of the insured, it reached the hands of the company's agent at Thomasville, Georgia; the first premium on the policy having previously been paid on the date on which the application was made, and nothing remaining to be done by the insured before he was entitled to the possession of the policy.

5. It is not shown that any material error occurred upon the trial, and the evidence authorized the verdict.

DECIDED JUNE 29, 1917.

Action on insurance policy; from Thomas superior court—Judge Thomas. June 3, 1916.

*O'Byrne, Hartridge & Wright, Theodore Titus,* for plaintiff in error. *Pope & Bennet, Roscoe Luke,* contra.

BROYLES, P. J. Mrs. Boswell brought suit against the Massachusetts Mutual Life Insurance Company on a policy of insurance on the life of her husband, William H. Boswell, in which she was named as the beneficiary. The salient facts in the case appear to be as follows: William H. Boswell, a resident of Meigs, Georgia, on June 8, 1911, made application to the defendant insurance company for a policy of insurance upon his life for the sum of eight thousand dollars. The application was taken by A. Bennett, the local agent of the company residing at Thomasville, Georgia, and was sent by Bennett to W. J. Harty, general manager of the company for south Georgia, residing in Savannah, Georgia, who in turn forwarded the application to the company at its home office in Springfield, Massachusetts. On June 16, 1911, the company approved the application and issued a policy of insurance thereon, and placed it in the mails in Springfield, Mass., directed to their agent, William J. Harty, at Savannah, Georgia. The policy was received by Harty at Savannah on June 19, 1911. Harty mailed the policy to A. Bennett, the company's agent at Thomasville, Georgia, who received it on the morning of June 20, 1911. The insured, William H. Boswell, died between 7 and 8 o'clock upon the evening of June 20, 1911. He was taken sick about June 12, 1911, and never recovered. Sent with the policy, and folded therein, was a receipt for the first premium, signed by the secretary of the company, which stated that the receipt was not valid unless countersigned by William J. Harty, manager. This receipt was countersigned by Harty, who in turn stamped thereon the following indorsement "Not valid unless countersigned by A. Bennett." This receipt, so countersigned, was sent by Harty along with the policy to Bennett at Thomasville. The receipt was never countersigned by Bennett or delivered by him to the applicant. The policy of insurance was not delivered to the applicant or to any one for him by Bennett, but was returned

(together with the receipt) by Bennett to Harty at Savannah, who forwarded both documents to the company at its home office. Prior to the trial Bennett, the local agent of the company, died. The contract of. insurance was entirely prepared by the insurance company. The policy provided that the insurance began June 8, 1911, and that the next annual premium would be due on June 8, 1912. On June 22, 1911, the son-in-law of the deceased applicant wrote a letter to the defendant company in which he stated .that "the premium on this policy was in hand ready to be paid, on delivery of the same." By amendment to the petition it was alleged that "at the time of making said application for life insurance the said W. H. Boswell did pay to A. Bennett, the agent of the defendant, the sum of $526.64 by executing and delivering to the said Bennett, as agent of the defendant, at Meigs, Georgia, a promissory note for that amount, with interest; the exact due date thereof plaintiff is unable to aver, for the reason that that was known only to said Boswell and the said defendant, and said Boswell is now dead, and the knowledge rests peculiarly with the defendant, but plaintiff avers that said note was duly accepted by said defendant, acting through said Bennett, as cash, and said insured was then and there in the same condition of health as when said application was given." The defendant was notified to produce this note, and answered that it did not have the note.

It is argued by counsel for the plaintiff in error that the general demurrer to the petition should have been sustained because, first, the petition showed that no actual delivery of the policy was ever made to the insured or his agent, and that the contract of insurance contemplated and required such a delivery; and, second, that the petition failed to allege that the insured, when the policy was delivered (if it was ever delivered, in contemplation of law), was in the same condition of health that he was in when he made the application for the insurance, and that under the contract of insurance such an allegation was necessary. Both of these questions involve a consideration of the terms of the contract of insurance, which we will discuss a little later.

Under our view of the case there are three controlling questions therein,—two of law and one of fact, to wit: First, did the contract of insurance provide for an actual delivery of the policy of insurance? Second, did it stipulate that the insured, at the

time when his application for insurance was approved by the company and a policy of insurance was issued thereon, and at the time of the delivery (whether actual or constructive) of the policy, should be in the same condition of health that he was in when he signed the application? Or was the provision as to health merely that at the time *of the payment of the first premium on the policy* he should be in the same condition of health that he was in when he signed the application? And, third, was the first premium on the policy paid when the application was signed? (There was no contention that it was paid at any other time.) The application contained the following stipulation: "I agree that the insurance hereby applied for shall not be in force until the acceptance and approval of this application by the company at its home office, the delivery of the policy to me or my agent, and the payment of the first premium as required therein during my present condition of health; and that upon such delivery said policy shall be considered as having become effective upon the date stipulated in the policy as the date on which the insurance begins." It will be seen that this stipulation does not require an "actual" delivery of the policy, and, therefore, under the ruling in *New York Life Insurance Co.* v. *Babcock,* 104 *Ga.* 67 (30 S. E. 273, 42 L. R. A. 88, 69 Am. St. R. 134), such a delivery was not necessary. Under that decision, even if there was not a delivery of the policy, in contemplation. of law, when the insurance company approved Boswell's application, issued a policy of insurance thereon, and placed it in the mails addressed to its agent at Savannah, Georgia, to be ultimately delivered by another of its agents at Thomasville, Georgia, there was in our opinion such a constructive delivery when the policy reached the hands of the latter agent, during the lifetime of the insured; the first premium on the policy having been paid on the same day that the application was made, and nothing remaining for the insured to do before he was entitled to the possession of the policy.

This ruling is not affected by the fact that there was enclosed with the policy a receipt by the company for the payment of the first premium, which receipt was not valid until countersigned by the agent at Thomasville, and by the further fact that this agent did not countersign it, but returned it and the policy to the company. As was said by the Supreme Court in the *Babcock* case,

supra, "If the delivery was not completed when the policy was mailed, it certainly became so when it reached the hands of the local agent during the lifetime of the applicant, and while he was in good health. Construing this act of the company in transmitting the policy to the agent, in the light of this contract, it necessarily follows, in the absence of any proof to the contrary, that the agent received the policy charged with no other duty except to hand it unconditionally to the applicant. If this be true, the possession of the agent was the possession of the applicant, and while in the hands of the agent, the policy was simply held by him on deposit or in trust for its real owner. This owner had a right to demand possession of it. Upon refusal he could have recovered it by an action of trover. Conceding this right, we can not see, how death can rob the beneficiary of her rights under the contract." It will be noted that the insurance contract in the *Babcock* case required that the delivery of the policy should be made while the insured was in good health, while in the instant case, as we shall hereafter show, there was no such requirement. When the policy was received by the agent of the company at Thomasville, the insured having already paid the first premium thereon, and there remaining nothing more for him to do before he was entitled to the possession of the policy, and the contract of insurance not requiring that at the time of the delivery of the policy he should be in good health, or in the same condition of health that he was in when he made the application, he was entitled to the immediate possession of the policy, and it was the duty of the agent at Thomasville to immediately countersign the receipt for the premium, and to deliver the policy; and the fact that he failed to perform this duty can not inure to the benefit of the defendant company nor injuriously affect the rights of the insured. In *Alston* v. *Greenwich Insurance Co.,* 100 *Ga.* 282 (29 S. E. 266), it was said by Chief Justice Simmons: "The contract had been made and agreed upon between it [the insurance company] and Alston who paid the consideration therefor; it was therefore a good contract, a valid policy, whether it was delivered to Alston or was still in the hands of the agent. Civil Code, § 2089 [Park's Ann. Code, § 2470]. Alston was therefore entitled to the policy and the agent had no right in law to withhold it. The knowledge on his part that Alston had violated one of the

conditions of the policy by increasing the risk of the company would not have authorized him to refuse to deliver it upon Alston's demand. It was his duty to deliver it." In addition to these authorities, see also Civil Code, §§ 2470, 2499; *Fireman's Fund Insurance Co.* v. *Pekor*, 106 *Ga.* 1 (31 S. E. 779); Cooke on Life Insurance, 43; 1 Joyce on Insurance, §§ 91, 95, and the other authorities cited in the *Babcock* case.

As to the second question: It is clear to us that when properly construed the above-quoted stipulation in the application means, so far as the health of the applicant is concerned, merely that at the time of paying the first premium on the policy he must be in the same state of health that he was in when he signed the application. The stipulation, as will be noticed, is contained in a single sentence, comprising four clauses. The first three clauses are set apart by commas, and the last clause by a semicolon. The words, "during my present condition of health," apply to and modify the other words of the clause only in which they appear, to wit: "and the payment of the first premium as required therein during my present condition of health." Considering the way the sentence is written and punctuated, the correct grammatical construction would seem to be that the words, "during my present condition of health," apply to and modify only the other words of the clause in which they appear, to wit: "and the payment of the premium as required therein." It is true that the insurance policy states that the first premium "is payable upon delivery of this policy," but it is also true that under another provision of the policy, premiums can be paid, under certain conditions, on or *before* the date on which they are due. And this ambiguity in the policy, under the well-settled rule of law, must be construed in favor of the insured. However, if, notwithstanding the arrangement and punctuation of the clauses in the sentence, the words, "during my present condition of health," could be construed as applying to and modifying the other clauses in the sentence, such a construction could not be adopted, for it would be construing an ambiguous stipulation in an insurance contract most favorably for the insurer and most unfavorably against the insured, which is exactly the reverse of the law. This proposition is so well settled that we deem it superfluous to cite authorities upon it. It will be remembered that in this case the record discloses that the contract of insurance was prepared entirely by the

insurance company.  We are not unmindful that a different construction has been given this same stipulation by the Supreme Court of Alabama, in Massachusetts Mutual Life Insurance Co. *v.* Crenshaw, 186 Ala. 460 (65 So. 65) ; and while it is with some diffidence that we venture to disagree with a court of such high standing, the well-settled rule of law as to the construction of insurance contracts forces us to do so.

The remaining controlling question is: Was the first premium on the policy paid when the application for the insurance was made? If not paid then, it was not paid at all.  Upon the trial the plaintiff introduced two witnesses whose evidence tended to show that upon the same day that Boswell signed the application for insurance he gave the local agent of the defendant company at Thomasville, who had procured the application, a note for the full amount of the first premium on the policy.  This evidence, while vague and indefinite, and not altogether satisfactory, we are not prepared to say had no probative value whatever, as is insisted by counsel for the plaintiff in error.  While these witnesses did not read the note, and did not know who was the payee named therein, or the time the note was to run, they testified positively and without contradiction, in substance, that on or about the day Boswell signed the application, the insured and the agent of the defendant company were in a store discussing the subject of insurance, that the insured sat down and wrote on a paper, that he handed this paper to the agent, saying  "Here is the note for the full amount of the first premium," and that the agent placed this paper in a folder and put it in his pocket.  This evidence, with the legal deductions and inferences arising therefrom, was in our opinion sufficient to authorize the jury to find that on the day on which Boswell signed the application for insurance he paid the first premium thereon, by giving to the agent of the insurance company a valid negotiable promissory note, signed by him, and payable either to the agent or the insurance company, for the full amount of the first premium on the policy of insurance.  Under such circumstances, the jury were authorized to find also, in the absence of any evidence to the contrary, that the agent had authority to receive this note as the payment for the first premium on the policy, especially since the policy did not require that this premium should be paid in cash, and provided that "premiums are

payable in advance, on or before the date when due, at the home office, or to the agent or cashier holding the company's official receipt therefor signed by the president, or a vice president, or the secretary, which receipt shall not be valid unless countersigned by said agent or cashier."

Under the view we have of the case, no material error occurred upon the trial. The admission of the testimony complained of was not erroneous for any reason assigned. While it was weak and vague, it had some probative value, and was admissible for what it was worth. The charge of the judge fully and fairly presented the law of the case and the contentions of the parties, and in one particular was more favorable to the defendant than the law allowed, as he erroneously instructed the jury that before the plaintiff could recover, it must appear that the policy was delivered to the insured or his agent during the condition of health which he enjoyed when he made the application for insurance. There is no material error in any of the excerpts from the charge excepted to. The evidence as a whole authorized the verdict. It is true that there was some evidence contradicting the statements of the insured in his application, as to his condition of health, especially by physicians who testified that the applicant had previously had heart and liver troubles. The evidence, however, did not disclose that the applicant himself knew that he had been so affected, or that he had knowingly or intentionally made any material misrepresentations in his application about the condition of his health. The evidence on the question as to whether the first premium had ever been paid possibly authorized a finding that it had not, but it also authorized a finding that it had; and, as the jury's finding upon that point has been approved by the trial judge, that question has been finally determined.

*Judgment affirmed. Jenkins and Bloodworth, JJ., concur.*