## RUTHERFORD v. ACACIA MUT. LIFE INS. CO.*

### No. 16941.

Court of Appeal of Louisiana. Orleans.

May 16, 1938.

*Rehearing denied June 13, 1938.

E. M. Thore, of Washington, D. C., and Montgomery & Montgomery, of New Orleans, for appellant.

Deutsch and Kerrigan, of New Orleans, for appellee.

JANVIER, Judge.

This is a suit on an insurance policy on the life of plaintiff's husband. On September 1, 1934, he obtained a policy in the sum of $1,500.00. He died on January 10, 1937. The company declined to pay and in defense averred that the policy, which, on June 1, 1936, had lapsed because of nonpayment of premiums, had been reinstated as the result of an application made by the insured on July 20, 1936, which application had contained wilful misrepresentations as to the condition of the health of the said insured. The company also averred that the said misrepresentations were known by the insured to be false and were so material that, had they not been made and had the true condition of the insured's health been known, the reinstatement would not have been granted. No copy of the said application for reinstatement was attached to or made part of the policy when the reinstatement was consented to by the company.

On the trial counsel for plaintiff objected to the introduction of evidence offered by the company to show that the statements said to have been made in the application were false. This objection was based on the fact that no copy of the said application for reinstatement was attached to and made part of the policy, which, it is asserted, is necessary if the falsity of such statements is to be availed of as a defense to a suit on the policy. This objection was based on Act No. 227 of 1916 (page 492), which reads as follows:

"That every policy of insurance issued or delivered within the State * * * by any life insurance corporation doing business within the State shall contain the entire contract between the parties and nothing shall be incorporated therein by reference to any constitution, by-laws, rules, application or other writings unless the same are endorsed upon or attached to the policy when issued; and all statements purporting to be made by the insured shall in the absence of fraud be deemed representations and not warranties, and no statement or statements not endorsed upon or attached to the policy when issued shall be used in defense of a claim under the policy unless contained in a written application and unless a copy of such statement or statements be endorsed upon or attached to the policy when issued. Any waiver of the provisions of this section shall be void." Section 2.

In answer to this objection counsel for the company argued that the reinstatement had been effected as the result of a new contract made not in the State of Louisiana—where it would have been affected by the statute—but in Washington, D. C., where, it is shown by evidence, there is no statute similar to the said Louisiana enactment.

The District Judge, in ruling on the objection, gave reasons which indicated an opinion that the evidence should be excluded. But, feeling that a final result would be more speedily reached in the appellate court if all the evidence could be placed in the record, he allowed the evidence to be introduced and, after a trial, rendered judgment for plaintiff, stating that he considered the objection to the evidence to be well founded. He rendered judgment in favor of plaintiff for the face amount of the policy with 6 per cent. interest from March 22, 1937, and from that judgment defendant company has appealed.

Defendant's contention that the agreement to reinstate constituted a new contract, made in the District of Columbia and, therefore, not affected by the Louisiana statute, is founded on the following facts:

When the application for reinstatement was executed by the insured it was mailed to the home office of the company in Washington, D. C., and with it was sent a remittance covering the past due premiums. After this application and the remittance were received in Washington the company, in due course, decided to grant the reinstatement, and placed in the mail in Washington notification to the insured that his application for reinstatement had been granted.

Counsel contend that the Supreme Court of Louisiana has held that, where an application for insurance, accompanied by remittance to cover the first premium, is sent from one state to an insurance company domiciled in another and all that remains to complete the contract is for the company to grant the application, the contract is completed in the state in which the acceptance is mailed and not in the state from which the application was sent. They cite Coci v. New York Life Insurance Company, 155 La. 1060, 99 So. 871, 872, in which our Supreme Court said:

"The general rule, sustained by ample authority, is that:

"'Where an application is made for a life policy and a sum of money paid to the agent of the insurer to be applied on the first premium if the insurer decides to issue a policy, the contract is complete on the issuance of the policy and no delivery is essential.

"'The weight of authority seems to be to the effect that on the acceptance of the application the contract is consummated.' 14 Ruling Case Law, p. 898.

"'A contract of life insurance is consummated upon the unconditional written acceptance of the application for insurance by the company to which such application is made. Actual delivery of the policy to the insured is not essential to the validity of a contract of life insurance, unless expressly made so by the terms of the contract. New York Life Ins. Co. v. Babcock, 104 Ga. 67, 30 S.E. 273, 42 L.R.A. 88, 69 Am.St.Rep. 134.'

* * * * *

"It was the completion and mailing of the contract that constituted the delivery

of the policy within the intendment and meaning of the law. * * *

* * * * *

"Construing the application and the policy together, our conclusion is that. delivery of the policy was made when it was mailed at the home office of the company, and, the insured being in good health at· that time, and the premium having been paid, the policy became effective and was in force at the time of the death of the insured."

They also cite many other cases. But we deem it unnecessary to make other reference to them than to say that it is obvious that the question which was involved in the Coci Case and in the several others relied upon was whether or not the contract had taken effect when the acceptance was mailed in the one state, or when it was delivered to the applicant in the other, and not whether the law of the one state, as distinguished from the law of the other, should be applied to the contract. In other words, the point involved was based on the element of time rather than on that of place. As we have said, the court gave no consideration to whether the contract was affected by the laws of one state.rather than by the laws of the other, but considered solely the question of "when" the contract had gone into effect. It found that it had taken effect "when" it was mailed and that there could be a recovery under it since the applicant had been in good health "at that time".

■ If it is possible for an insurer to escape the effect of a statute such as Act No. 227 of 1916 by merely requiring applicants for insurance to mail their applications and their first remittances to the home offices in other states, then the announced public policy of this state may easily be circumvented. That it is the public policy of this state that no insurance application may be pointed to as evidencing fraud unless attached to the policy is settled in Fisette v. Mutual Life Insurance Company of N. Y., 162 La. 620, 110 So. 880. There the Supreme Court, referring to this same statute, said:

" * * * the Legislature made the statute a matter of public policy by providing that its provisions could not be dispensed with by consent of the parties."

However, let us assume for the moment that the reinstatement of the policy was effected in Washington, D. C., and let us consider the matter in that light.

■ Defendant real·zes that it must establish the fact that a new and separate contract was entered into when the reinstatement was granted because it concedes that the statute of 1916 affected the original contract and that, therefore, if the reinstatement could be considered as nothing more than the injection ·of new life into that original contract, the evidence tendered would have been inadmissible.

In Johnson v. Life Insurance Company of Virginia, 169 So. 159, we considered and discussed at length the question of whether, where a policy is reinstated, the reinstatement constitutes a new contract, or merely re-establishes the old, and we said ·that, if the reinstatement is based on a right which the insured is granted under the original contract, the said reinstatement is merely a revivification of the old. But we held that in the policy which was there involved there was no right to demand reinstatement and that, therefore, a new contract had resulted. Here there is found in the policy itself a provision reading as follows:

"A lapsed policy may be reinstated at any time provided the member makes application therefor, furnishes evidence of insurability satisfactory to the Company and pays the premiums due to the date of reinstatement with interest at the rate of six per cent per annum."

It would follow that, if the many cases on which we based our views in the Johnson Case are sound, the result here is that no new contract was made and that all that was accomplished was the re-establishment of the original contract exactly as it was and subject entirely to the laws of Louisiana.

But it is argued that that case is not authority here because, having found there that the policy did not grant reinstatement as a matter of right, what we said concerning policy which does contain a stipulation entitling the insured to reinstatement was merely "obiter dictum", and it is· also said that we did not give. consideration to the point made here—that there is a difference between the agreement to reinstate and the actual reinstatement; that there are, in truth, two contracts—the one induced by misrepresentation and the other the re-establishment of the original con-

tract with the same terms and conditions which were in the original policy.

If that be true—and let us so treat it for the moment—its effect would be to prevent the application of the Louisiana statute to that new contract made in Washington. But it is conceded that even that new contract, as reinstated, is subject to all the terms and conditions of the original contract, and in the original contract is to be found a stipulation which, in language very similar to that contained in the statute, provides that the policy shall constitute the entire agreement and that no statement shall be relied upon as evidencing misrepresentation unless it is contained in the application attached to the policy. In Fisette v. Mutual Life Insurance Company of N. Y., supra, the Supreme Court found just what we notice here: that even if it had found that the statute could not be said to apply to an "establishment" of a policy, still exactly the same result would have been reached by excluding, under the terms of the contract itself, the evidence relied upon as showing misrepresentation. There the Supreme Court said (page 882):

"Aside from the statute, or perhaps in obedience of it, the policy itself, in this case, contains the stipulation:

" 'The Contract.—This policy and the application therefor, copy of which is indorsed hereon or attached hereto, constitute the entire contract between the parties hereto. All statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and no such statement of the insured shall avoid or be used in defense of a claim under this policy unless contained in the written application herefor and a copy of the application is indorsed on or attached to this policy when issued.'

"Therefore, if the statute of 1916 were not applicable to the statements made in the application for 'establishing' or 'placing in force' the policy that was not already placed in force by the payment of the first premium, the contract itself would furnish the law on the subject between the parties."

It is quite evident that the Supreme Court did not treat the agreement to "establish" as a contract not subject to the terms and conditions of the original policy; otherwise it could not, in considering the effect of the "establishment", have referred to the above quoted provision of the orig-

inal contract. Here we may say, as the court said in the Fisette Case, that, aside from the statute, the contract contains the following stipulation:

"This policy, together with the application therefor, a copy of which is attached hereto and made a part hereof, shall constitute the entire contract and all statements made by the member shall, in the absence of fraud, be deemed · representations and not warranties, and no such statement shall be used to void this policy or in defense to a claim hereunder unless contained in said application and unless a copy of the application shall be attached to the policy when issued."

Of course, the point at issue in the Fisette Case was not whether the "establishment" of the policy had been effected in another state, but whether the statute could be said to be applicable to an "establishment" of a policy as distinguished from an "issuance". It was argued that the statute could be applied only to the original issuance because it would not be possible for an insurer to obtain an already-issued policy in order to attach to it an application for "establishment". The court held that the statute applied to an application, whether made in connection with the original issuance or in connection with the effort to "establish" the policy later and that it would have been proper for the company to have refused to "establish" except upon the production of the policy in order that the application might be attached to it:

" * * * The company could have regained possession of the policy and indorsed upon or attached to it any document that the company might have desired should form part of the contract."

In Eddins v. National Life & Accident Insurance Company, 173 La. 644, 138 So. 430, 431, the court extended the doctrine of the Fisette Case to a reinstatement of a policy, holding that, if the insurer desires to prove fraud by pointing to a statement contained in the application, the said application must be attached to the policy, and this whether the application be one for the original issuance, or one for reinstatement:

"This Fisette Case was thoroughly considered by this court. The legal question presented in this case is exactly the same as was presented in that case, and this court there found that its decision on the question was supported by the weight of

authority in other jurisdictions. Until the Legislature amends the statute with respect to applications for the reinstatement of lapsed insurance policies, the decision in the Fisette Case will be adhered to."

If we apply the result reached in those cases to the facts here, even if we treat the statute as having no application, we find that the contract itself provides that the statements relied upon—not being attached to the policy—may not be availed of "to avoid the policy or in defense of a claim * * *".

■ Since we find the evidence inadmissible, we may not and need not consider the contention of plaintiff that the evidence, even if admitted, would not have been sufficient to show wilful misrepresentation.

■ We notice that the judgment awarded interest at 6 per cent. from March 22, 1937. This award resulted from the application of section 1 of Act No. 17 of 1920, which provides that "all life insurance companies doing business in this State, whether foreign or domestic, are hereby required to pay all death claims within sixty days from date of receipt of due proof of death and should they fail to do so without just cause, then policy will bear interest at the rate of six per cent. (6%) per annum from date of receipt of due proof of death until paid." See Dart's Louisiana General Statutes, § 4112. We note that, though the statute requires that death claims be paid within sixty days from date of receipt of proof of death, if such claims are not paid, interest at 6 per cent. shall be allowed from the date of the receipt of proof of death. It would seem, then, that this interest should have been allowed from January 22, 1937, instead of from March 22, 1937. However, since plaintiff has neither appealed nor answered the appeal, no amendment can be made in her favor.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is affirmed, at the cost of appellant.

Affirmed.