33348.   NATIONAL LIFE & ACCIDENT INS. CO. *v.* MOORE.

DECIDED FEBRUARY 9, 1951.

*William F. Buchanan, Mary J. Nelson,* for plaintiff in error.
*Mitchell & Mitchell, Walter H. Bolling,* contra.

SUTTON, C. J. (After stating the foregoing facts.) The plaintiff's petition shows that her husband made application to the defendant company for a policy of life insurance for $1000, on June 10, 1949, and that he paid the full amount of the first monthly premium at that time. The insurance company gave him a receipt for $2.15, the amount of the premium, which stated, "That when such deposit is equal to the full first premium of the policy applied for and such application is approved at the Home Office of the Company for the Class, Plan and Amount of insurance and at the rate of Premiums as so applied for, then, without affecting the issue date and anniversaries as set forth in the policy, the amount of insurance applied for will be in force from the date of this receipt, but no obligation is assumed by the Company unless and until such application is so approved." It is alleged that this application was approved at the home office of the defendant company for the class, plan, the amount of insurance, and the rate of insurance as applied for, and that a policy of insurance on the life of Ernest L. Moore with the plaintiff named as beneficiary was issued by the defendant, the policy being numbered 1601328.

If the application was approved at the home office of the defendant as alleged, then under the terms of the premium receipt the insurance became effective from the date of such receipt. Was the application so approved? This is the controlling question in the case. The binder and the approved application for insurance would constitute a valid contract of insurance. This would be true, although the applicant died before the application was approved, since the insurance became effective from the date of the receipt and not from the date of approval of the application. The receipt was a binder, con-

ditioned only upon the approval of the application by the company at its home office. "A binder is a contract of insurance in praesenti, temporary in its nature, intended to take the place of an ordinary policy until the same can be issued. It is a short method of issuing a temporary policy for the convenience of all parties, to continue, unless sooner canceled, until the execution of a formal policy." *Fort Valley Coca-Cola Bottling Co.* v. *Lumbermen's Mutual Cas. Co.,* 69 *Ga. App.* 120 (3) (24 S. E. 2d, 846). It was held in *New York Life Ins. Co.* v. *Babcock,* 104 *Ga.* 67 (1, 2) (30 S. E. 273, 42 L.R.A. 88, 69 Am. St. R. 134), that "A contract of life-insurance is consummated upon the unconditional written acceptance of the application for insurance by the company to which such application is made. Actual delivery of the policy to the insured is not essential to the validity of a contract of life-insurance, unless expressly made so by the terms of the contract."

The intention of the parties to a life insurance contract controls as it does in other contracts, and we think it was the intention of the parties here for the insurance in question to become effective from the date of the binder receipt, upon the approval of the application therein referred to, for this is exactly what the binder receipt states. In 29 Am. Jur. 160, Insurance, § 144, it is stated: "Usually, when an insurance agent procures an application for life, health, or accident insurance, he accepts payment of the first premium from the applicant. Quite commonly, there is a provision in the receipt given to the applicant, which, in some instances, is duplicated in the application, to the effect that the insurance shall be considered as in force from the date of the receipt or the date of the medical examination, provided the application is approved and accepted at the home office of the insurer. Such receipts are known in the insurance business as 'conditional receipts,' or, less frequently, as 'conditional binding receipts.' . . Upon the acceptance of the application, the insurer becomes obligated notwithstanding the policy is not delivered, and the receipt protects the applicant against the contingency of sickness or disability rendering him uninsurable intervening the date of the receipt and the delivery of the policy. In other words, the vitality of such a receipt is retroactively derived from the acceptance of the application."

It is said in 2 A.L.R. 2d, 975, that "The following cases support the view that recovery should be granted under a binding receipt providing that the contract should date back to the date of the application or the medical examination if the application is approved at the home office of the company, where the change in the physical condition of the applicant took place after the completion of the investigation or medical examination required by the insurer but before final approval of the application. United States.—Gaunt v. John Hancock Mut. L. Ins. Co. (1947; CCA2d NY) 160 F2d 599 (cert den (1947) 331 US 849, 91 L ed 1858, 67 S Ct 1736). Arkansas.—Cooksey v. Mutual L. Ins. Co. (1904) 73 Ark 117, 83 SW 317, 108 Am St Rep 26 (dictum). Kentucky.—Indiana Nat. L. Ins. Co. v. Maines (1921) 191 Ky 309, 230 SW 54 (dictum). North Carolina.— Gardner v. North State Mut. L. Ins. Co. (1913) 163 NC 367, 79 SE 806, 48 LRA NS 714, Ann Cas 1915B 652 (dictum). Washington.—Starr v. Mutual L. Ins. Co. (1905) 41 Wash 228, 83 P 116."

The plaintiff in error contends that the application in the present case was not approved by the company at its home office, that this appears from the copy of the application attached to the petition, and that the exhibit attached controls instead of the allegations of the petition that the application was approved.

The application shows that it was taken by P. L. Langston, agent for the insurance company, on June 10, 1949, and that his report was made on that date. The application appears regular on its face and there is nothing to indicate that it might have been rejected by the company. The "District Office Report" was made and signed by Catherine Wright, as secretary, on June 14, 1949, and states that the application had been carefully reviewed in the district office as required by the rules of the company. Then, near the bottom of the application, "Non-Medical" was marked "OK" by "E. B.", and after "Feature", or the kind of insurance, "Life", the word "approved" was checked or marked with "O" and the rating was checked or marked the same way. This entry was dated June 16, 1949, and was signed by some initials, apparently the initials of two parties. In the upper left hand corner of the application,

marked, "For Home Office Use," is the number, 1601328, which the plaintiff alleges is the number of the policy. There is nothing to show or indicate that the application was rejected or disapproved. The petition alleges that the application was approved by the defendant company, and also alleges that the policy was issued. The petition was good against the defendant's general demurrer, and the trial court did not err in overruling the demurrer.

In so holding, we have not overlooked the principle of law and cases cited by the plaintiff in error to the effect that a petition or pleading when challenged by demurrer should be construed most strongly against the pleader.

The case of *Maddox* v. *Life & Casualty Ins. Co.*, 79 *Ga. App.* 164 (53 S. E. 2d, 235), cited and relied on by the plaintiff in error, is different on its facts from the present case, and is not controlling on the question for decision here. The receipt in that case provided, substantially, that where the full first premium on the policy applied for was paid, and the company was satisfied at the time of the completion of the medical examination or part B of the application if no medical examination was required, and the risk was acceptable to the company under its rules for the plan and amount of insurance applied for, then the insurance would be in force as of the day of the completion of the medical examination or part B of the application, if such examination was not required, but otherwise no insurance would be in force under the application unless and until the policy was issued and delivered, and the full first premium paid to and accepted by the company during the lifetime and insurability of the applicant. That case was decided on the theory that no final completion of the application was shown. The application and receipt provided that the insurance was to become effective after such a completion of part B of the application, and not from the date of the application.

*Judgment affirmed. Felton and Worrill, JJ., concur.*