12130. FOLDS, adm'x, *v.* NEW YORK LIFE INSURANCE CO.

1. While actual delivery of the policy is not essential to the validity of a consummated contract of life insurance, unless by the terms of the agreement it be expressly so required, and while it is true that, even where the agreement requires delivery of the policy as a condition precedent to liability, still, if the contract has been otherwise fully consummated, the receiving of the policy from the company by its agent, for unconditional delivery to the applicant, will be taken as equivalent to delivery to the latter, and while it is true that, even though the agreement may require that the delivery of the policy shall be made while the applicant is in good health, it still remains the rule that, where the contract has been otherwise fully consummated and the agent thus receives the policy from the company for unconditional delivery while the applicant remains in good health, the contract, in that event and under such circumstances, will be treated as delivered and as binding (*New York Life Insurance Co.* v. *Babcock,* 104 *Ga.* 67, 30 S. E. 273, 42 L. R. A. 88, 69 Am. St. R. 134), and even though it might seem that, where the agent has received from his company an otherwise consummated contract for unconditional delivery save only that the occupation and condition of health of the applicant should have remained the same since examination, and the agent negligently fails and refuses to comply with such positive instructions although at the time of its receipt by him the health and occupation of the applicant had not changed, the policy should be held to have been delivered and the contract held binding under the principle which treats as done that which ought to have been done, yet, where the application for a policy of life insurance and the policy itself both provide that the insurance shall not take effect unless the first premium is paid and the policy is delivered to and received by the applicant during his lifetime and while in good health, and that only certain named officers of the company can make, modify, or discharge contracts or waive any of the company's rights or requirements, and that none of these acts can be done by the agent taking the application, and where the policy is forwarded by the company to the agent, not for unconditional delivery to the applicant, but, under its written instruction to its agent, " for delivery and collection of premium, provided there has been no change in the occupation or condition of health since examination," and " under no circumstances are you to mail or deliver any policies on which requirements are called for until all such requirements have been fully complied with," such transmission of the policy to the agent, with such conditional and limited authority for delivery to the applicant, is not tantamount to a delivery to the latter, where it also appears that the applicant was not in good health when the policy was so received by the agent or at any subsequent time; nor do recitals contained in such an undelivered policy create a presumption that the first premium has been paid. *Reese* v. *Fidelity Mutual Life Ins. Asso.,* 111 *Ga.* 482 (36 S. E. 637); *Clark* v. *Mutual Life Ins. Co.,* 129 *Ga.* 571 (59 S. E. 283); *Brown* v. *Mutual Benefit Life Ins. Co.,* 131 *Ga.* 38 (61 S. E. 1123); *Williams* v. *Empire Life Ins. Co.,* 146 *Ga.* 246 (91 S. E. 44); *Reliance Life Ins. Co.* v. *Hightower,* 148 *Ga.* 843 (98 S.

E. 469); *McKenzie* v. *Northwestern Mutual Life Ins. Co.,* 26 *Ga. App.* 225 (105 S. E. 720).

2. The evidence in this case cannot be held to establish the fact that the policy was in any wise delivered by the agent to the applicant. The excluded letter from the agent to his company, even had it been otherwise admissible, was without probative value. The court properly excluded as hearsay the testimony of the plaintiff, whereby it was sought to put in evidence certain conversations with the agent. Nor could such declarations of the agent be held to bind the company, since they were made after the death of the applicant and not while acting on behalf of his principal nor within the scope of his agency. Moreover, under the undisputed facts and circumstances disclosed, it is immaterial whether there had been a delivery of the policy by the agent to the applicant. While it is ordinarily true that any question as to whether or not the plaintiff was in good health at the time a policy was delivered should be left for determination by the jury (*Few* v. *Supreme Lodge Knights of Pythias,* 136 *Ga.* 181 (3) (71 S. E. 130) ), yet where all the testimony relating thereto excludes every reasonable hypothesis but one, the question becomes one of law for adjudication by the court. *Empire Life Ins. Co.* v. *Jones,* 14 *Ga. App.* 647 (3) (82 S. E. 62); *Life Ins. Co. of Va.* v. *Pate,* 23 *Ga. App.* 232 (3), 235 (97 S. E. 874); *Mutual Life Ins. Co.* v. *Bolton,* 22 *Ga. App.* 566 (2), 570 (96 S. E. 442).

DECIDED OCTOBER 7, 1921.

Action on insurance policy; from Jasper superior court — Judge Park. December 6, 1920.

*Doyle Campbell, Hall, Grice & Bloch,* for plaintiff.

*Bryan & Middlebrooks, Greene F. Johnson,* for defendant.

JENKINS, P. J. Mrs. Annie Folds, as administratrix, sued the New York Life Insurance Company on an insurance policy upon the life of her deceased husband. The application for insurance, which was made a part of the policy, provided: "that the insurance hereby applied for shall not take effect unless the first premium is paid and the policy is delivered to and received by me during my lifetime and good health" and "that only the President, a Vice-President, a Second Vice-President, a Secretary or the Treasurer of the Company can make, modify or discharge contracts, or waive any of the Company's rights or requirements, and that none of these acts can be done by the agent taking this application." The policy contained also the following provisions: "The policy and the application therefor, copy of which is attached hereto, constitute the entire contract. . . No agent is authorized to waive forfeitures or to make, modify or discharge contracts, or to extend the time for paying a premium." From the plaintiff's evidence it appears that the policy

was written up and dated December 28, 1918, and, after being forwarded from the home office in New York to the Atlanta office of the company, it was mailed on January 2, 1919, to the company's agent who had solicited the policy, — H. E. Smith, Newborn, Ga. The policy as forwarded to this agent was accompanied by a letter to him, stating that it was sent " for delivery and collection of premium, provided there has been no change in the occupation or condition of health since examination," and that " under no circumstances are you to mail or deliver any policies on which requirements are called for until all such requirements have been fully complied with." On the trial the plaintiff testified: " He was taken sick on Sunday, the 29th day of December. He took his bed that day — staid in bed some. His physical symptoms were that he had a cold. I don't know about fever, I didn't have any thermometer to tell; he wasn't any too hot. He went to bed on Sunday and I called Dr. Wilson. He prescribed for him. The prescription was quinine and soda. That is all. He said he thought he had influenza. He passed a very good night Sunday night. Not any opiates or anesthetics at all were given him. Dr. Wilson came on Monday; he made one visit Monday. He was in bed part of the time Tuesday. He made one visit Tuesday. He didn't leave any more medicine Tuesday. He came Wednesday. Mr. Folds was sitting up by the fire when he came. He did not prescribe anything for him Wednesday. He came Thursday night. Mr. Folds had gotten a little worse Thursday night. I don't remember whether he was in bed when the doctor got there Thursday night. The doctor called Friday also, and he continued to get worse. He died Saturday, the 4th of January. He was buried on Sunday. From the 29th of December, 1918, until the 4th day of January, 1919, he was confined to his house, didn't attend to any business — he staid around home. I said he died of pneumonia. I don't know whether the influenza went into pneumonia or not. I have nursed pneumonia. My husband's case was similar to this — similar symptoms." It appears that the policy remained in the hands of the company's agent, who afterwards became temporary administrator of the applicant's estate; that after the death of the applicant the agent, while temporary administrator, exhibited to the plaintiff at her home certain papers that the decedent had in

the bank of which the agent was cashier, among which was the policy in question. The plaintiff testified that after looking at the papers she requested Smith to keep them for her, and that the policy remained in his possession until afterwards returned by him to the company.

On the trial the policy was produced by the company under a notice given to it by the plaintiff. Other than the recital in the policy there was no evidence that the first premium had ever been paid. The plaintiff offered in evidence a letter from the agent Smith to the defendant, addressed to its office in Atlanta, and dated February 4, 1919, stating that, on account of his having been appointed temporary administrator of Folds' estate, his (Smith's) attorney would not consent to his return of the policy sued on. The letter was offered for the purpose of showing that Smith had received and delivered the policy to the applicant. This letter, on objection, was excluded by the court. The court excluded also certain testimony of J. O. Stanton, a witness for plaintiff, as follows: "I asked him whether the policy had come, and he said he had it, — the policy on Will Folds' life, he told me it had come. He didn't say how much. He said he had it and hadn't delivered it. He said Mr. Folds had a box at the bank. He didn't state anything else. He said he had the policy, and Mr. Folds had a box in his bank. I had not seen Mr. Folds — I just heard he was sick. The following testimony of the plaintiff was also excluded: " Mr. Smith said he wanted to see me about being administrator. I told him I would like to get him to help me for a while — I wasn't able to see after anything myself. Nothing was said about its being necessary to look after the matter promptly and right away. He said he had been told by several to get the place as temporary administrator if he could. He came to see me again. I asked him to carry these papers back and put them in the bank. He said this policy had been there several days. He did not say whether W. J. Folds had ever seen it. He said W. J. Folds told him just to keep this policy up there with his other papers as he had always done. Mr. Smith said when he received it he put it with his other papers in the bank. When he came to my house he had it all together in one bundle." At the conclusion of the evidence introduced by the plaintiff the court granted a motion for nonsuit.

It is not necessary to add anything further to what is said in the headnotes.

*Judgment affirmed. Stephens and Hill, JJ., concur.*