## RESERVE LOAN LIFE INSURANCE COMPANY *v.* PHILLIPS, administrator.

1. Delivery is largely a matter of intention; and constructive delivery of an insurance policy or other contract of insurance is sufficient, unless the contract otherwise provides. Since contracts of life insurance should be construed most strongly against the insurer, a stipulation in a life-insurance policy which provides that the policy shall not take effect unless the insured is alive and in good health "at the time of its delivery" may include constructive as well as actual delivery, if the facts and circumstances of the case indicate a clear intention upon the part of the insurer to deliver. Actual delivery of a policy of life-insurance is not essential to the validity of a contract of life-insurance, unless expressly made so by the terms of the contract; and constructive delivery is sufficient unless the contract otherwise provides.

2. Where the premium upon a policy has been paid, the requirement of a stipulation in an insurance policy of the character referred to in the preceding headnote may be met and fulfilled by the delivery of the policy to one acting as the agent of the insured in receiving it, and delivery may be effected by merely mailing the policy to the applicant during the lifetime and good health of the applicant. But the mailing of such policy by the insurer to its general agent, or to a local agent, cannot be a delivery to the applicant for insurance, in the absence of evidence that the dual agency thus created existed by consent of both the would-be insurer and the applicant for insurance.

3. It appearing from the agreed statement of facts under which this case was tried that the applicant was dead before the policy, which had been mailed by the insurer from Indianapolis, Indiana, reached its agent in Valdosta, Georgia, the circumstances attending the mailing to the agent in Valdosta not indicating a clear intention to deliver the policy to the applicant, but on the contrary merely a purpose to transmit the policy to its agent for further action in the premises, the stipulation was not complied with, and there was neither actual nor constructive delivery of the policy to the applicant for insurance.

4. In view of the foregoing headnotes, the judgment of the Court of Appeals, affirming the judgment of the trial court in its judgment against the insurer, must be reversed.

No. 3443. SEPTEMBER 10, 1923. REHEARING DENIED SEPTEMBER 25, 1923.

Certiorari; from Court of Appeals. 29 *Ga. App.* 99.

This case was submitted to the trial judge upon an agreed statement of facts, which showed, in substance, that on May 10, 1919, Leo B. Phillips made application to the plaintiff in error for insurance upon his life in the sum of $2000. This application was taken by one Creel, a soliciting agent of the defendant company, who was authorized to take it, and to whom Phillips paid the first annual premium to be due on said insurance, at the time of signing the application. Creel gave to Phillips a receipt for said premium, which, among other things, contained a stipulation that "the insurance shall take effect and be in force in accordance with the terms of the policy for which this settlement is given." At that time W. J. Scheider was general agent for the defendant company at Valdosta, Georgia, for territory including Lowndes County (the county in which Phillips resided at the time of signing the application). After the execution and delivery of the application Phillips submitted to a medical examination as required by the company, and the application was forwarded to the home office of the company in Indianapolis, Indiana, where it was received in due course and thereafter approved by the company. Pursuant thereto the insurance company on May 20, 1919, prepared and issued its policy of insurance on the life of Leo B. Phillips in the sum of $2000, according to the terms of the application. On the afternoon of May 20, 1919, the policy so issued was placed in the United States mail by the defendant company at Indianapolis, Indian, addressed to its general agent, Scheider, at Valdosta, Georgia, for transmission to Phillips. At this time Phillips was alive and in good health. On the morning of May 21, 1919, about 10 or 11 o'clock, a timber-cart tongue fell upon Leo B. Phillips and inflicted a fatal injury from which he died almost instantly. Prior to this accident he was in good health. The policy of insurance reached Valdosta during the night of May 21, 1919, and was taken from the post-office by Scheider on the morning of May 22, and shortly thereafter delivered to Creel to be transmitted to Phillips. While the policy and a receipt for it enclosed in a letter accompanying them were in the mail, and after they had reached the

post-office at Ousely, Georgia, Creel and Scheider caused the letter containing the policy and receipt to be returned to them at Valdosta; and they in turn returned the policy to the home office of the defendant company. The company admitted that the plaintiff had furnished due proof of death and demanded payment; and it was admitted that the company had tendered to the administrator of Phillips the amount of the premium named in said policy, with interest thereon.

The application signed by Phillips contained the statement that "I hereby agree that the policy shall not take effect unless I am alive and in good health at the time of its delivery to me." In the face of the policy appeared the stipulations that "this policy shall not take the effect unless the insured is alive and in good health at the time of its delivery, nor then unless the first premium has been paid," and that "this policy and the application therefor (copy of which application is attached hereto) shall constitute the entire contract between the parties hereto." At the time the policy was mailed from the home office of the company and in the same envelope, there was mailed a policy receipt, as follows:

"Ousely Georgia, .......... 19..... Received of and accepted from A. T. Creel, agent of Reserve Loan Life Insurance Company, of Indianapolis Indiana, policy No. 68421, for $2000.00 insurance on my life in the above-named company; the same being as applied for, and the same complies fully with the terms and conditions as represented to me by the agent. I hereby warrant that I am now in good health, and have paid the premium required by the policy.                     ———————

"Notice: Agent must have insured sign this receipt upon delivery of the policy, and return to home office at once."

This receipt was forwarded to Phillips by Creel, together with a letter asking him to sign the same and return to him. It was agreed that section 43 of the company's instructions at that time required that "Policies should be delivered personally by the agent securing the application, and his work is not complete until the receipt accompanying the policy has been signed by the applicant, and returned to the home office;" and that Phillips had no knowledge of such rule, or of the existence of the book of instructions. It was also agreed that there were contracts between the company and Scheider, general agent, and Scheider and Creel,

soliciting agent, in which all parties to the respective contracts agreed to work and be bound by the rules of the company; and that Phillips had no knowledge of any such contracts.

Judgment was rendered against the insurance company. Its motion for a new trial was overruled, and it sued out its bill of exceptions to the Court of Appeals, which affirmed the judgment of the lower court; and the case was brought to this court by certiorari.

*Guilford A. Deitch, Frank G. West, A. T. Woodward,* and *J. J. Murray,* for plaintiff in error.

*Whitaker & Dukes,* contra.

RUSSELL, C. J. (After stating the foregoing facts.)

1. The decision in this case depends upon the question whether there was such a delivery of a policy of insurance, during the lifetime of the applicant for the policy, as transformed the *applicant* into an *insured.* The law notes such a wide difference between these two relations that the distinction between an applicant for a policy and the holder of a policy is ofttimes all important.

Leo B. Phillips applied to the insurance company for a policy of $2000 on his life. In his application he stipulated "that this policy is not to take effect unless I am alive and in good health at the time of its delivery to me." At the time of issuing the policy the company put the following condition in it: "This policy is not to take effect unless the insured is alive and in good health at the time of its delivery, nor then unless the first premium has been paid." It appears from the evidence that the first premium had been paid, and consequently no question arises upon that phase of the case. There was introduced in evidence a receipt for Leo B. Phillips to sign; but it is not necessary to consider this evidence further than as a circumstance illustrating the intention of the insurer, even if it be relevant for that purpose. The proposed contract of insurance consisted of the application and the policy; and as both of these papers as signed by each of the parties contained the same stipulation, we shall first consider this portion of the contract. It is well settled, of course, that contracts of insurance as prepared and proposed by insurers are to be construed most strongly against the insurer. *Arnold* v. *Empire Mutual Annuity & Life Insurance Co., 3 Ga. App.* 685 (60 S. E. 470). For this reason we are of the opinion that the words, "at the time of

its delivery to me," would include delivery to any person acting for or in behalf of the insured, as well as a delivery of the policy to the insured himself. In other words, the phrase "delivery to the insured" may include constructive as well as actual delivery, depending upon facts or circumstances which indicate a clear intention *on the part of the insurer* to surrender possession of the policy for the use and benefit of the insured. As was said in *Willingham* v. *Smith,* 151 *Ga.* 102, 103 (106 S. E. 117), "delivery is largely a question of intention," and this is especially true as to constructive delivery.

The evidence shows that there was in this case no actual delivery to Leo B. Phillips during his lifetime; but it is insisted by the defendant in error that the payment of the first annual premium, acceptance and approval of the application, the preparation and issuance of the policy, and the mailing of the policy to the agent at Valdosta for transmission to the insured completed the contract of insurance, and that accordingly the policy was in force at the time of the death of Leo B. Phillips. The defendant in error contends that although the policy did not actually reach the hands of Leo B. Phillips prior to the time of his death, such delivery was not necessary as a condition precedent to the consummation of the contract. We agree to the proposition that actual delivery of a policy of insurance is not essential to the validity of a contract of life insurance, unless expressly made so by the terms of the contract. *New York Life Insurance Co.* v. *Babcock,* 104 *Ga.* 67 (30 S. E. 273, 42 L. R. A. 88, 69 Am. St. R. 134) ; Devine *v.* Federal Life Insurance Co., 250 Ill. 203 (95 N. E. 174). It is not to be doubted that constructive delivery of a policy of insurance is sufficient unless the contract otherwise provides. But even conceding that this policy of insurance be construed most strongly against the insurer, and considering that the word "me," liberally construed in behalf of the applicant, would include delivery to any agency acting in behalf of the applicant to whom the policy might have been delivered, it would have to be shown that there was a delivery by the insurer of the policy to some one acting for the applicant, before there could be said to be a delivery "to me."

2. We agree with the contention of the defendant in error that the stipulation does not necessarily require an actual delivery; but even if we indulged the utmost strictness of construction against

the insurer, facts and circumstances must appear indicating an intention to deliver on the part of the insurer, whether this evidence arises from an actual delivery to an agent for the insured or an attempt to deliver to the insured himself. An instance of the latter might have been found in the mailing of the policy involved in this case directly to the insured by depositing it, properly addressed to the applicant and stamped, in the post-office at Indianapolis, Indiana, while the applicant was in good health and before he was accidently killed. This would be merely a constructive delivery. But a mailing of the policy from Indianapolis to the insurer's own agent, whose obligation was to the insurer and who could in no sense represent the applicant, would not be delivery to the applicant, either actual or constructive. For the purposes of a legal delivery, whether actual or constructive, the policy involved in this case was no nearer to the applicant when it left the hands of the agent of the insurer at Valdosta than it was before it was mailed by the insurer at Indianapolis.

3. It appears from the agreed statement of facts that the applicant for the policy was accidentally killed on the morning of May 21, and the policy of insurance was not received by the agent at Valdosta until the morning of May 22, though the mail which contained the policy reached Valdosta some time in the night of May 21. From this it appears that the policy of insurance could not have been delivered to the applicant either while in good health or during his lifetime. Nor could it have been delivered to any agent for the applicant before his death, unless the agent of the company was also the agent of the applicant, clothed by him with authority to accept and acknowledge receipt of such policy. There is no evidence that the agent of the company occupied any fiduciary relation towards the applicant; and in fact it would not have been legal for him to have occupied such a position of dual agency without the consent of the insurance company. The law properly follows the Gospel. "No servant can serve two masters; for either he will hate the one and love the other, or else he will hold to the one and despise the other." Luke, 16th chapter, 13th verse. Following this rule, which is based upon the experience of humanity and expressed by Him who spake as never man spake, the same doctrine has been adhered to by this court. See *Ramspeck* v. *Pattillo*, 104 *Ga.* 772 (30 S. E. 962, 42 L. R. A. 197, 69

Am. St. R. 197) ; *Sessions* v. *Payne,* 113 *Ga.* 955 (39 S. E. 325) ; *Red Cypress Lumber Co.* v. *Perry,* 118 *Ga.* 876 (45 S. E. 674) ; *Whitley* v. *James,* 121 *Ga.* 521 (49 S. E. 600) ; *Reed* v. *Aubrey,* 91 *Ga.* 435, 17 S. E. 1022, 44 Am. St. R. 49), and other cases. We do not mean to hold that there may not be many instances of dual agency which are lawful; but we do hold that a dual agency cannot exist unless both principals are fully apprised of its existence and consent for the same person to represent them both. See also *Gann* v. *Zettler,* 3 *Ga. App.* 589 (60 S. E. 283). So the death of the applicant supervened without delivery, either actual or constructive, and the stipulation in the application was not complied with, and there was no delivery either actual or constructive. In consequence of this, by the terms of the applicant's own application there can be no recovery upon the policy. The mailing of the policy to the agent of the company, without more, cannot evidence an intention of the company to deliver the policy to the applicant. On the contrary, where it appears, as in the present instance, that the agent was to take a receipt for the policy from the insured, in which was included a certificate or statement from the insured that he was at that time in good health, the circumstance indicates that there was something more remaining to be done by the agent before he was to deliver the policy to the applicant, and therefore that in no sense could the receipt of the policy by the agent of the company be construed to be a delivery to the applicant.

Counsel for defendant in error rely upon the cases of Stevenson *v.* Allison, 165 Ala. 238 (51 So. 622, 138 Am. St. R. 26), Francis *v.* Mutual Life Insurance Co., 55 Oregon, 280 (106 Pac. 323), Thompson *v.* Michigan Mutual Life Insurance Co., 56 Ind. App. 502 (105 N. E. 780), Unterharmscheidt *v.* Missouri State Life Insurance Co., 160 Iowa, 223 (138 N. W. 459, 45 L. R. A. (N. S.) 743), and Kilborn *v.* Prudential Insurance Co., 99 Minn. 176 (108 N. W. 861), to support the proposition that "The mailing, with postage prepaid, of the policy here involved to the company's agent at Valdosta, Georgia, was a delivery of such policy to the agent; and where such mailing to its agent was for transmission to the insured, the delivery to such agent was tantamount to a delivery to the insured." The cases all differ as to their facts from the case at bar, and, as we have already ruled, the question of the intention of the insurer to deliver a contract of insurance is to

be determined by the facts and circumstances of each particular case, because intention is peculiarly a matter of *fact*. While it is true, as held in the Stevenson case, supra, that the delivery of a policy to an agent is delivery to the insured, though the agent retains it in his own keeping, the facts in this case show that the delivery to the general agent did not take place until the morning after the applicant for insurance had been killed; and certainly there is no case in which delivery can be made to an agent when there is no longer any principal in existence. The facts of this case differ from those of the Francis case, supra, for in the present case the policy had not been received by the agent prior to the death of the applicant, and the stipulation in the application in the Francis case was that the policy "shall not take effect until the first premium shall have been paid, during my continuance in good health, and the policy shall have been signed by the secretary of the company and issued." There was the further stipulation in the application in the Francis case that " I have paid $—— to the subscribing soliciting agent, who has furnished me with a binding receipt therefor, signed by the secretary of the company, making the insurance in force from this date, provided this application shall be approved, and the policy duly signed by the secretary at the head office of the company and issued."

The Thompson case, supra, merely decides the principle to which we have just adverted, that the delivery would have been good if the local agent had received the policy while the applicant was alive and in good health. In the Unterharmscheidt case, supra, the policy was mailed and received at the agent's office for delivery not later than July 20, prior to the date of the beginning of the sickness (July 23) from which the insured died. Instead of the company's agent being at his office he was absent when the policy was received, and did not return until August 7, nearly two weeks after the insured had died. The delay in delivery was altogether chargeable to the insurer, because there was time in which the policy could have been delivered to the applicant while he was in good health. The Kilborn case, cited supra, has no bearing whatever on the case before us, where the question sub judice is as to a stipulation requiring the validity of the insurance to depend upon whether the delivery of the policy is made during the life and good health of the applicant. In this case it is conceded that the

premium has been paid, and the insurance company tenders to repay the premium with interest. In the Kilborn case the only issue before the court was as to the authority of an agent to accept a note in payment of the first premium, and so far as appears from the record there was no requirement similar to that in the present case as to the good health of the insured at the time of the delivery of the policy, nor any reference whatever to that subject as a stipulation of the policy.

While it is stated in the agreed statement of facts that the policy in this case was forwarded to W. J. Scheider for transmission to Leo B. Phillips, and therefore it may be immaterial that both Schneider and Creel were agents of the company, the undisputed fact remains that Scheider did not receive the policy until after the death of Phillips, the applicant. It cannot be presumed that the insurer intended (when it mailed the policy at Indianapolis) for Scheider to deliver the policy even if Phillips were dead; and unless this be true, to impute to the insurer an absolute intention to deliver the policy merely because the policy was mailed before Phillips died would be altogether unreasonable.

We think the Court of Appeals erred in misconceiving the facts in the case and the practical results necessarily flowing therefrom, and that the judgment of that court should be reversed.

*Judgment reversed. All the Justices concur.*