17135.   HOME INSURANCE COMPANY *v.* CLINKSCALES.

In this case no sort of delivery was required by the contract, the evidence demanded a finding that there was a constructive delivery of the insurance policies to the applicant, and the verdict for defendant is without evidence to support it.

DECIDED MAY 12, 1926.

Description of case, and counsel, the same as in the next preceding case.

LUKE, J.  The Home Insurance Company of New York sued A. J. Clinkscales on a note given for two insurance policies, one indemnifying him against loss or damage by fire, and the other against loss or damage by storms.  Defendant admitted a prima facie case, assumed the burden of proof, and the jury found in his favor.  The company excepted.  The pleading in this case has already been passed upon.  See *Home Ins. Co.* v. *Clinkscales,* 34 *Ga. App.* 27 (128 S. E. 73), where it was held that one of the defendant's pleas was good as against general demurrer.  Upon this plea the case was tried.  The plea was in substance as follows: The only consideration for defendant's signing the note declared upon was an undertaking on the part of plaintiff to issue and deliver to him (defendant) a policy of fire-insurance, "he having signed an application for such policy, and having at the same time delivered in advance to the company's soliciting agent, J. B. Tarver, the note sued on, relying on said agent's assurance to him, at the time, that said note would be returned to defendant in the event said company did not approve said application and issue and deliver to him said policy of fire-insurance.  No policy of insurance of any kind was thereafter ever issued by said company and delivered to defendant in person, or to any one authorized to accept the same for him or in his behalf; and this defendant has in no way ever received any benefit from said company, by way of fire protection or otherwise, for his having executed said note."  The application, which was signed by defendant, provided that the company should not be bound by "any act done or statement made by or to any agent, or other person, which is not contained in this, my application."  Each policy of insurance contained the following stipulation:  "This policy is valid only when signed by J. B.

Insurance, 32 C. J. p. 1123, n. 99; p. 1124, n. 1.
Life Insurance, 37 C. J. p. 636, n. 24, 25.

Tarver, agent, Blakely, Ga." The premium note, the application, and the policies were all entirely silent regarding any requirement as to delivery of the policies.

Clinkscales testified substantially as follows: The application for insurance was taken on or about April 20, 1922. At that time he turned over to Tarver two notes, one payable to Tarver's order, and the other the note sued on. The only ·consideration for his signing the notes was the insurance applied for in the application. Afterwards he heard no more of the matter, and was never advised that his application had been accepted, or that policies of insurance were issued thereon. He made no inquiry about the matter. The note payable to Tarver, and which fell due in the fall, was traded to the First National Bank of Blakely. When this note became due the bank notified him. At the time the application was given and the notes signed, nothing was said respecting the delivery of the policies of insurance. No policy was ever delivered to witness or to any agent of his. He had previously taken out a policy of insurance in another company for which Tarver was agent, with a loss clause in favor of Forman & Co., of Chicago, and Tarver had, by the defendant's direction, sent the policy to that company. At the time he paid the note payable to Tarver, at the bank, he thought he had insurance based upon this application. He had never seen the policies, and thought they had probably been sent to Forman & Co., who held a security deed to the land on which the buildings described in the application were located. After he had filed his answer in this case, he learned that the policies had not been sent to Forman & Co., and thereupon he filed an amendment to his original answer. He signed the application, and could read. J. B. Tarver, sworn as a witness for the plaintiff, testified in substance as follows: He and one Cooper, both agents of the company, took the application for insurance. Tarver had authority only to take applications and notes and transmit them to the company's home office for acceptance or rejection. He had no authority as agent for the company to use his judgment or discretion in any way. The property insured was inspected and approved by Cooper, who was a special agent of the company. Witness mailed the application and the note to the home office of the company. He "used" the note made payable to him, at the bank, deducted his commission, and remitted the

balance of the proceeds to the company in payment of the first installment of premium. The note was negotiated to the bank before its maturity. About ten days after the application and the note sued on were sent to the company it sent to him through the mail the policies applied for. Each policy was signed by the company by and through its duly authorized officers, and each was countersigned by the witness on the day of their arrival at Blakely. Defendant could have gotten said policies at any time after the witness received and countersigned them, by calling at his office and asking for them. There was never any understanding or agreement between the defendant and Cooper or Tarver about delivering the policies to the applicant. The witness never notified the defendant that the policies had been issued, or that he held them for him. After the witness signed the policies no entries had to be made by him on any book.

The allegation in the plea, as to Tarver's assurance to the defendant that his note would be returned to him "in the event the company did not approve said application and issue and deliver to him said policy of fire insurance," need not be considered, since it is not sustained by the evidence. In the absence of any stipulation in the premium note, the application, or the policies, requiring delivery of any sort, actual delivery of the policies was not necessary. *N. Y. Ins. Co.* v. *Babcock,* 104 *Ga.* 67 (2) (30 S. E. 273). Nor, indeed, would constructive delivery necessarily be the only manner of proving the consummation of the contract, if it could be otherwise shown. The ultimate question is, was the application accepted, did the minds of the contracting parties meet, was the insurance in effect? There is no dispute as to the proper issuance of the policies and of their timely reception by the soliciting agent, and their being countersigned by that agent. The policies were promptly mailed to the local agent, but not unconditionally, for the reason that they had to be countersigned by the agent. Such mailing was not a delivery to defendant. But the policies were complete in every respect when they were promptly countersigned by the agent. How did the case then stand? Did the agent's failure to call the defendant's attention to the fact that the policies had been issued and were in his possession defeat the contract? We think not. Defendant had paid the first installment of his premium without making any inquiry as to the policy.

True, he testified that he did this under a misapprehension, but there appears to have been no satisfactory reason for such misapprehension. The policy that confused him was in a different company, and of a different date from those we are considering, and inquiry of the bank, or of Tarver, or of the company, or examination of the note upon which payment was made, would have most likely enlightened defendant in this regard. Defendant never at any time made inquiry about the policy, either of the company or of the local agent; nor did he request that the policy be delivered to him. Did the fact that the local agent had to sign the policies show that he had the right of finally deciding whether or not defendant's application should be accepted? It would seem that he could have prevented the consummation of the contract, by not signing the policies, but he had signed them both, and there is nothing to indicate that anything further had to be done to bind the company. The agent swore that he had no discretionary power. Under the ruling in the *Babcock* case, supra, the company was bound, and under the facts of this case we see no reason why the defendant was not bound.

It is urged that this case is controlled by the decision in *Reserve Loan Life Ins. Co.* v. *Phillips*, 156 *Ga.* 372 (119 S. E. 315). In that case suit was brought upon a life-insurance policy. The application provided that the policy should not take effect unless the insured was alive and in good health at the time of the delivery of the policy. The policy was mailed to the company's general agent at Valdosta on May 20, 1919. The insured was accidentally killed on the morning of May 21. The policy reached Valdosta during the night of May 21, and was taken from the post-office by the company's general agent on May 22. Shortly thereafter the policy was delivered to the soliciting agent to be transmitted to the insured. Along with the policy there was mailed from the home office a form of receipt to be signed by the insured, at the bottom of which appeared the following words: "Agent must have·insured sign this receipt upon delivery of the policy, and return to home office at once." Clearly the company did not intend to·accept the application and deliver the policy until the applicant had signed the receipt. This he could not do, because he was dead. The facts in the *Phillips* case differentiate it from the case at bar, and likewise from the *Babcock* case. which it cites approvingly.

The judgment in the case we are considering is reversed upon the principle enunciated in the *Babcock* case.

*Judgment reversed. Broyles, C. J., and Bloodworth, J., concur.*