## 24170. PIERCE *v.* LIFE INSURANCE COMPANY OF VIRGINIA.

DECIDED JANUARY 10, 1935.

*Hallie B. Bell, Cork & Cork,* for plaintiff.

*Jones, Johnston, Russell & Sparks,* for defendant.

GUERRY, J. Mrs. G. T. Pierce filed suit in trover to recover a certain insurance policy issued by Life Insurance Company of Virginia on the life of her father, Frank L. Hagan, in which she was named as beneficiary. The application for the policy was taken on March 24th, 1933, but there was no physical examination by a doctor. The applicant answered certain questions with respect to his physical condition, and the agent for the company forwarded the application, together with one dollar, which he, the agent, advanced to the office of the company in Virginia. A policy was issued by said company, dated April 3rd, 1933, and was mailed

to its agent at Macon, to be delivered to the insured. The policy provides that "no obligation is assumed by the company prior to the date and delivery of this policy, nor unless on said date the insured is alive and in sound health." The application, which was not attached to and made a part of the policy, contains the same provision, "that no obligation shall exist against said company under said policy, although premiums may have been paid thereon, unless such policy is delivered to me and unless upon its date and delivery to me the life proposed shall be alive and in sound health." It also contains a statement that the applicant is in good health. The application contains also this statement in reference to the health of the insured: "Dr. Barrow treated applicant in Central of Georgia Hospital in April, 1931, for stomach trouble. Applicant now recovered and in good health." It appears from the testimony of the plaintiff and the agent of the defendant company, as well as from the signed application, that the applicant seemed to be in sound health on March 24th, the day the application was taken. The application was made on Thursday and was forwarded to the company on Friday or Saturday of that week. The agent of the company testified that of his own motion and without any agreement in reference thereto, he paid to the company the premium, expecting to make business out of it. The premium so advanced covered the week of April 3d and also the following week. The policy was received from the company at the Macon office the latter part of March, possibly Thursday or Friday of the following week. On April 3, Monday morning, the husband of the beneficiary came to the agent and paid to him the dollar which had been advanced by the agent. The policy was at that time in the Macon office. The husband of the beneficiary claimed that he told the agent, at the time such dollar was paid, that the insured was sick. The agent denied that he was so told and said that when he found out about the sickness he offered to return the money, but it was refused. The policy was never actually delivered to the insured or the beneficiary, but remained in the Macon office until after the death of the insured on April 4th, 1934. After the insured signed the application he returned to Cochran, Ga., and on March 26th, 1934, Dr. Smith, of Cochran, was called on at night by Mr. Thompson, a brother-in-law, with reference to the physical condition of the insured, and prescribed for him, but did not see him until

March 31st. He diagnosed his case at that time as gastric ulcer, and stated that his chances for living a few days were very slim and that it was not worth while to carry the insured to a hospital for treatment, as his condition was hopeless. He testified further that if the insurance company, in investigating this applicant, had had a doctor to make a physical examination on March 24th, this examination would have disclosed the presence of an enlarged tumor in the stomach. This could have been detected by merely putting the hand on the stomach. The insured might, however, have appeared in good health and thought he was in good health at the time. The insurer also introduced in evidence its rules and instructions to agents as follows: "Delivery of industrial policies: Before delivering a policy the agent must ascertain whether the insured is in as good health as when the application was written. If any change whatever has taken place in the health or habits of the insured, the agent must not on any account deliver the policy, but return it immediately to the home office with full information. Under no circumstances is a policy to be delivered prior to the date of issuance, nor must delivery be made after that date unless the insured is seen and proper inquiry made regarding his health." At the conclusion of the testimony the trial court directed a verdict for the defendant. The plaintiff excepted.

This case presents a situation in which an applicant for insurance, although seemingly and to outward appearances in good health, was, as a matter of fact, in the last stages of a fatal disease. It appears from the uncontradicted evidence that he himself was not aware of his condition on March 24th when he made the application, but that on March 26th he was in need of medical attention, and on March 31st was in such a state that his life was but a question of a few days or hours. From the evidence it also seems that there had been a payment of the first premium and an acceptance thereof by the company, and that the policy was issued by the company and sent to its Macon office for delivery to the insured. As was said in *New York Life Insurance Co.* v. *Babcock*, 104 *Ga.* 67 (30 S. E. 273, 42 L. R. A. 88, 69 Am. St. R. 134), "A contract of life insurance is consummated upon the *unconditional* [italics ours] written acceptance of the application by the company to which such application is made. (2) Actual delivery of the policy to the insured is not essential to the validity of a contract

of life insurance unless expressly made so by the terms of the contract. (3) The receipt by an agent from his insurance company of a policy to be *unconditionally* [italics ours] delivered by him to the applicant is in law tantamount to a delivery to the insured, although the agent never parts with possession of the policy, and although its delivery to the applicant is by contract made essential to its validity." This court, in *Life & Casualty Co.* v. *Palmer*, 48 *Ga. App.* 381 (2) (172 S. E. 823), said, "Where a receipt is given to an applicant for insurance by a local agent of a life-insurance company, for the first premium upon a policy of life-insurance, and the money is forwarded to the home office of the company and there accepted as the first payment upon a policy, and the policy is issued and forwarded to the local agent for delivery to the insured, the contract of insurance becomes effective upon the acceptance of the premium by the insurance company and the issuance of the policy, notwithstanding the policy may by its terms take effect at a later date." An examination of the record in the latter case will disclose that there was no evidence on the part of the company to show that any conditions were attached to the delivery of the policy after its issuance by the company and delivery to the agent, and it also appears that the court in said case charged the jury in the language of the *Babcock* case cited above. The question of what is an unconditional delivery by the company to the agent was discussed in the case of *Folds* v. *N. Y. Life Ins. Co.,* 27 *Ga. App.* 435 (108 S. E. 627). After discussing what constitutes delivery, this language is used: "Where the policy is forwarded by the company to the agent not for unconditional delivery to the applicant, but, under its written instruction to its agent 'for delivery and collection of premium, provided there has been no change in condition of health since examination', and 'under no circumstances are you to mail or deliver any policies on which requirements are called for until such requirements have been fully complied with', such transmission of the policy to the agent with such conditioned and limited authority for delivery to the applicant is not tantamount to a delivery to the latter where it also appears that the applicant was not in good health when the policy was so received by the agent at a subsequent time." See also *Glover* v. *N. Y. Life Ins. Co.,* 27 *Ga. App.* 615 (109 S. E. 546). In Bowen *v.* Prudential Ins. Co., (Michigan) 51 L. R. A.

(N. S.), 587, it is said "The transmission of a policy of life insurance to a general agent of the insurer for delivery to the applicant with instructions not to deliver it to the applicant unless in good health is not such constructive delivery as will put the policy in force. See also *Reserve Loan Life Ins. Co.* v. *Phillips,* 156 *Ga.* 372 (119 S. E. 315); Mutual Life Ins Co. *v.* Jordan, 111 Ark. 324, 163 S. W. 799, Ann. Cas. 1916B, 682. The definition of "sound health" as used in this policy means the enjoyment of "such health and strength as to justify the reasonable belief that the insured is free from derangements of organic functions, or free from symptoms calculated to cause reasonable apprehension of such derangement, and that to ordinary observation and outward appearance her health is reasonably such that she may be insured with safety and upon ordinary terms, the requirement of good health is satisfied." *National Life & Accident Co.* v. *Smith,* 34 *Ga. App.* 242 (129 S. E. 113); *National Life & Accident Ins. Co.* v. *Martin,* 35 *Ga. App.* 1 (132 S. E. 120). In the *Martin* case the provision in respect to sound health at the time of the delivery of the policy applies only to unsoundness of health arising after the application and examination, and is unavailable unless it is shown that insured's disease developed between his application and the time when the policy was delivered. See Modern Woodmen of America *v.* Atkinson, 153 Ky. 527. In Priest *v.* Kansas City Life Ins. Co., 116 Kan. 421, it was said: "The effect of a clause that a life insurance policy shall not take effect unless the applicant is in good health at the time of its delivery is to protect the company against a new element of risk through a change in the applicant's condition arising after the investigation is made." The evidence in the present case discloses without dispute that the applicant was seemingly in good health on the date of the application, to wit: March 24th, and that the application was not forwarded to the home office in Virginia before the 25th or 26th. The policy was issued and dated April 3d, and mailed to its agent for delivery to the insured on or about the 30th or 31st of March. This delivery to the agent was conditional. It was not to be delivered before April 3d, and was not to be delivered unless the applicant was in sound health at that time, that is, there had been no change in his physical condition with respect to his health between the date of the application, March 24th, and the date of the delivery

of the policy. This delivery was not constructive when the policy came into the agent's hands, for there yet remained something for the agent to do, and that is the holding of the policy until the date marked thereon as the date of its issue and the examination of the applicant in respect to this change of health. It is true that had the applicant been able to show that there was no change in his condition between the time of his application and the time the policy was sent to the agent to be unconditionally delivered to him, the beneficiary might maintain a cause of action on the policy. These were the facts in the *Babcock* case, cited above. From the evidence it is apparent that while the applicant may have been so diseased at the time of making the application that his death was inevitable therefrom, such a situation was not apparent either to him or to the agent of the company on March 24. By the time his policy was issued and delivered to the agent the desperate condition of his health had become apparent, and in such a situation no constructive delivery of the policy had taken place. See, in this connection, Harrison Trust Co. *v.* Mutual Life Ins. Co., 278 Pa. 255 (122 Atl. 292); Bowen *v.* Prudential Ins. Co., 178 Mich. 63 (144 N. W. 543). In insurance contracts, as in other contracts, the intention of the parties governs. The acceptance of the application and issuing of the policy, without a change of health between the time of application and delivery, was a condition precedent, which was not waived by mailing the policy to the company's agent with instruction that he determine this fact. No delivery having been actually made and the change of health having become apparent when the agent received the policy, and no negligence or unnecessary delay in making inspection having been shown, the contract had never become completed. "Sound health," as applied in the present case, may mean an *apparent* change in condition of health between the day of application and the day of delivery. The applicant's condition on the day of application was apparently sound. Before the issuance of the policy and its delivery to the agent such apparent soundness became manifestly unsound. Such a contract not being complete, the plaintiff was not entitled to recover the policy sued for, and the court did not err in directing a verdict for the defendant.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*